```
IN THE UNITED STATES DISTRICT COURT
     WESTERN DISTRICT OF TENNESSEE
            WESTERN DIVISION
```

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. 06-cr-20412-2 |
| EVERETT JAMISON, | ) |
| Defendant. | ) |

**ORDER**

Before the Court is Defendant Everett Jamison's Appeal of Bond Revocation and Denial, filed May 11, 2020. (ECF No. 198.) The government filed a response on May 13, 2020. (ECF No. 199.) For the following reasons, Jamison's Motion is DENIED.

**I.  Background**

In November 2006, Jamison was indicted for an attempted bank robbery, during which he brandished a firearm, violations of 18 U.S.C. § 2113(a) and 18 U.S.C. § 924(c). (ECF No. 17.) In March 2008, a jury found Jamison guilty on both charges. (ECF Nos. 110, 119.) In April 2009, the Court sentenced Jamison to 41 months imprisonment on the bank robbery charge, and 84 months imprisonment on the firearm charge, to run consecutively for a total term of 125 months, to be followed by a three-year term of supervised release. (ECF Nos. 171, 172.) Jamison was released

in August 2017 and began his term of supervised release. (See ECF No. 181 at 1.)

In March 2020, Jamison was arrested and indicted in Tennessee state court for aggravated armed robbery. (See ECF No. 180 at 1.) The state court subsequently set bond.[1] (See id. at 2.) In April 2020, the U.S. Probation Office notified the Court that Jamison had allegedly violated the terms of his supervised release, specifically, the condition not to commit another crime. (Id. at 1-2.) The Court issued a warrant for Jamison to appear and address that violation. (ECF Nos. 181, 182.) The warrant was executed in late April 2020. (See ECF No. 184.)

On April 27, 2020, the Chief Magistrate Judge held an initial appearance hearing and entered an order of temporary detention. (ECF Nos. 184, 186.) On May 1, 2020, the Chief Magistrate Judge held a probable cause and detention hearing, (ECF No. 188), that was subsequently continued to May 5, 2020, (ECF Nos. 189, 193). The Chief Magistrate Judge set bond pending Jamison's compliance with certain conditions before his release, one of which was that a specific Memphis police officer serve as

---

[1] Although bond was set, Jamison did not post it. At the time of his hearings, he was in custody at a state facility. The government represents that, on April 24, 2020, Jamison's state charge was dismissed nolle prosequi. The government represents that Jamison's prosecution for the underlying alleged robbery is going to be continued in federal court.

a third-party custodian. (See ECF Nos. 189, 191.) On May 6, 2020, the Court was informed that the officer who was supposed to be Jamison's third-party custodian could not be custodian. (See ECF No. 193.) The government informed the Chief Magistrate Judge that it had evidence that Jamison had planned to abscond when released on bond and was attempting to create an alibi for his alleged supervised release violation. (See ECF No. 199 at 3.) The government submitted jail call recordings to support its assertion. (See id.; No. 193.) The Chief Magistrate Judge stayed the bond until he and the parties had time to review the recordings. (ECF Nos. 193, 194.) On May 8, 2020 the Chief Magistrate Judge held another status conference where he heard arguments from the parties about the jail calls. (ECF No. 195.) After hearing arguments, the Chief Magistrate Judge revoked Jamison's bond and ordered him detained pending his supervised release violation hearing. (ECF Nos. 195, 196, 197.) On May 11, 2020, Jamison appealed. (ECF No. 198.)

## II. Legal Standards

Federal Rule of Criminal Procedure 32.1 governs the procedure courts follow when a condition of supervised release is allegedly violated. Fed. R. Crim. P. 32.1; see also LR 72.1(b)(16). When a defendant is summoned or arrested on an alleged violation of supervised release, a magistrate judge must, inter alia, make a determination to release or detain the

defendant pending further proceedings. Fed. R. Crim. P. 32.1(a)(6). The magistrate judge relies on 18 U.S.C. § 3143(a)(1) in making that determination. Id. Eighteen U.S.C. § 3143(a)(1) provides that a defendant shall be detained unless the magistrate judge "finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." 18 U.S.C. § 3143(a)(1). The burden rests with the defendant. Fed. R. Crim. P. 32.1(a)(6). Sections 3142(b) and (c) provide that a defendant may be released on personal recognizance bond, with or without conditions, if the magistrate finds that the standard is satisfied. Id. § 3142(b)-(c).

The factors a magistrate judge considers in deciding whether a "person is not likely to flee or pose a danger to the safety of any other person or the community" are:

> (1) [t]he nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [involving sex trafficking], a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

4

        community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal State or local law; and

(4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Id. § 3142(g).

"If a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Review of a magistrate judge's detention order is de novo, see United States v. Montalvo-Murillo, 495 U.S. 711, 716 (1990); United States v. Legg, 211 F.3d 1271 (6th Cir. 2000) (unpublished table opinion); United States v. Koubriti, 2001 WL 1525270, at *5 (E.D. Mich. Oct. 16, 2001) (collecting cases), and shall be "determined promptly," 18 U.S.C. § 3145(b).[2]

---

[2] These review standards apply to a magistrate judge's detention determination in the revocation-of-supervised release context. Federal Rule of Criminal Procedure 32.1 cross-references and incorporates the substantive standards of the Bail Reform Act of 1984 at 18 U.S.C. § 3143(a)(1). But cf. United States v. Curtis, 237 F.3d 598, 603 (6th Cir. 2001) ("A magistrate court's probable cause determination in the revocation context comprises a preliminary, non-dispositive matter under § 636(b)(1)(A), and a district court must apply a clearly erroneous standard of review.").

5

Upon de novo review, the district court is not obligated to hold a hearing, but may rely on the defendant's record, transcripts and audio recordings of the defendant's detention hearings, and other "available information" as a basis for its findings of fact. See United States v. Okhumale, 2020 WL 1694297, at *3 (N.D. Tex. Apr. 7, 2020) (conducting de novo review by looking at the transcript of the detention hearing, the magistrate judge's detention order, the legal briefs of the parties, and the record); United States v. Martin, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) ("While the Bail Reform Act is silent about whether the defendant is entitled to an in-court hearing on an appeal of a detention order, there is ample authority for the conclusion that the Court may decide the motion on the filings (including proffers offered by counsel) as opposed to a hearing.") (collecting cases); 18 U.S.C. § 3142(g) ("The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning [the factors listed above].") (emphasis added); see also Legg, 211 F.3d 1271 (affirming district court that reviewed a magistrate judge's detention order de novo and used the transcripts and records of the defendant's earlier detention hearings as a basis for its findings of fact). "A de novo review

6

of the written submissions and docket filings is especially appropriate in this case, when the Court must endeavor to comply with the federal and State recommendations about [COVID-19] . . . as well as rule expeditiously." Martin, 2020 WL 1274857, at *3.

### III. Analysis

The Court has reviewed the record, the parties' briefing, the audio recordings of the hearings, the exhibits submitted at those hearings -- including the audio recordings of the jail calls -- and the probation officer's petition for warrant. Jamison has not proven by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the community if released on bond.

The first factor under 18 U.S.C. § 3142(g) -- the nature and circumstances of the offense charged -- weighs in favor of detention. Jamison's underlying crime was one of violence, and he brandished a firearm. (ECF No. 17.) His alleged supervised release violation is also one of violence and involved a firearm. (See ECF No. 181 at 1.) The jail calls made from state custody after Jamison had been arrested also support detention. On one of the calls, Jamison discusses getting money for a bond, in the middle of which he says, "[t]he thing is, when I get out, I'm leaving bro." There is no other discussion of absconding in the remainder of that call or any subsequent calls Jamison made. In

7

another call, however, he tells a contact to tell a third party, "August 10th I was with her. That's how we're going to play it. Tell her that, on August 10th, I was with her."[3] Later in the call, he reiterates, "tell her August 10th I was with her. Tell her we were school shopping with the kids. Tell her to get that information together. Do it." These comments cut against a finding that Jamison would be unlikely to flee or pose a danger to another person or the community if released on bond.

The second factor under section 3142(g) -- the weight of the evidence -- weighs in favor of detention. At his May 1, 2020 hearing, the government provided proof through a police sergeant that Jamison had confessed to the alleged violation of supervised release (the alleged armed robbery). DNA evidence puts Jamison at the scene of the alleged armed robbery. (See ECF No. 180 at 1.) On a search and arrest at Jamison's resident, a pair of shoes and red hand wraps were found that matched descriptions given by the employees of the store Jamison allegedly robbed. (Id.) Jamison's state arrest ticket corroborates these facts.

The third factor -- the history and characteristics of Jamison -- is neutral. When previously released on bond for the underlying offense, Jamison had a positive record of appearances

---

[3] August 10th, 2019, is the date of the alleged robbery.

8

at court proceedings. At sentencing on his original offense, Jamison had a criminal history category of I. (ECF No. 180 at 4.) He had served almost two years of a three-year term of supervised release before allegedly committing violations. (See ECF No. 181 at 1.) On supervised release, Jamison appears to have found support in a police officer mentor and employment through mixed martial arts. (ECF No. 180 at 2-3.) He raises some medical issues (asthma being the chief concern) and the risk of COVID-19 virus at the facility where he is located.[4] Weighing against him is that he has allegedly committed a violent crime while on supervised release. (See ECF No. 181 at 1.) The jail calls speak to his character and weigh against release.

The fourth factor -- the nature and seriousness of the danger to any person or the community -- weighs against Jamison. Armed robbery, the crime for which he was originally convicted, and now is alleged to have committed again, is a violent crime that poses a significant danger to the community.

Balancing the factors favors detention. Jamison has not proven by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any other person or the

---

[4] At the hearings, the parties spent a considerable amount of time discussing Jamison's medical history and the susceptibility and risk of contracting the COVID-19 virus at the facility where he is located. The Court understands these concerns and weighs them accordingly.

9

community if released on bond.  His request for revocation of his detention order is DENIED.

## IV. Conclusion

For the foregoing reasons, Jamison's Motion is DENIED.

So ordered this 27th day of May, 2020.

                                   /s/ *Samuel H. Mays, Jr.*
                                   SAMUEL H. MAYS, JR.
                                   UNITED STATES DISTRICT JUDGE